**Electronically Filed
Intermediate Court of Appeals
29655
25-JUN-2012
08:46 AM**

NO. 29655

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
FRANCIS M. SHYANGUYA, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(HPD Criminal No. 08347776)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Ginoza, JJ.)

Defendant-Appellant Francis M. Shyanguya (Shyanguya) was arrested after allegedly offering to pay an undercover police officer to engage in sexual conduct. He was convicted after a bench trial[1] of the offense of prostitution, in violation of Hawaii Revised Statutes (HRS) § 712-1200(1) (1993).[2]

On appeal, Shyanguya argues that his conviction should be vacated. Relying on State v. Wheeler, 121 Hawai'i 383, 219

---

[1] The Honorable Russel S. Nagata presided.

[2] At the time relevant to this case, HRS § 712-1200(1) and (2) (1993) provided:

    (1) A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee.

    (2) As used in subsection (1), "sexual conduct" means "sexual penetration," "deviate sexual intercourse," or "sexual contact," as those terms are defined in section 707-700.

P.3d 1170 (2009), Shyanguya contends that the charge against him was defective because it failed to allege the specific type of conduct under the statutory definition of "sexual conduct" that he offered or agreed to engage in for a fee. Shyanguya also contends that his trial counsel failed to provide effective assistance in representing Shyanguya at trial. We affirm.

BACKGROUND

I.

At trial, Plaintiff-Appellee State of Hawai'i (State) presented its case through the testimony of Honolulu Police Department Officer Jennifer Katanya (Officer Katanya). Officer Katanya testified that, acting in an undercover capacity and posing as a prostitute, she posted an "adult services ad" on the "craigslist" internet website. The ad, entitled "Come and get it !!!! -w4m - 24 (Waikiki - Incall)," stated in relevant part:

> Hello gentlemen.
> I'm a beautiful hapa female who will make all your fantasies come true. I'm 5'6, 120 lbs., 34C-25-35. I am seeking professional, mature, respectful, and clean gentlemen who want a classy, sexy, hot experience. I'm here only for a short while so give me a call and make a date tonight at [phone number]. My name is Bree.
>
> . . . .
>
> Rates
> Cash only please
> 1/2 hour date -  $200
> 1 hour date $250
> Ask me for my Tuesday special rates.

At about 11:00 p.m., Officer Katanya received a phone call from a male who said that his name was "Francis." The male caller asked if Officer Katanya was available and asked what her rates were. Officer Katanya replied that she was available and explained her rates. Officer Katanya stated that it would be "200 for the hour and 150 for half an hour[,] [b]ut it depended on what he wanted to do." The male caller stated that "he wanted full service." Based on her training and experience, Officer Katanya knew that "full service" meant sexual intercourse and fellatio in street vernacular.

2

Officer Katanya and the male caller agreed to meet at the entrance of a hotel. Shyanguya arrived and met Officer Katanya at the hotel entrance, and Officer Katanya recognized Shyanguya's voice as that of the male caller because he spoke with a "[s]light accent." They went into a hotel room and Shyanguya took out $100. Officer Katanya asked, "[W]hat did you wanna do again?" and Shyanguya said "he wanted to do full service." Officer Katanya asked how much money Shyanguya had, and he replied, "I only have a hundred dollars so we'll just do full service for the half an hour."

Officer Katanya asked Shyanguya if he had any condoms. Shyanguya replied that he had "condoms and lubrication" in a plastic bag he brought with him. Shyanguya also had a copy of Officer Katanya's ad in the bag. After Shyanguya placed his money and bag on a table, Officer Katanya signaled for the arrest team to enter, and Shyanguya was arrested.

II.

Shyanguya testified in his own defense and provided a version of the events that differed in significant respects from Officer Katanya's version.

Shyanguya testified that he did not view the ad referred to by Officer Katanya on the "craigslist" website, but instead responded to an ad he saw on the "Cityvibe" website. The Cityvibe ad was almost identical to the ad Officer Katanya had placed on craigslist.[3]

Shyanguya called the number in the Cityvibe ad, and the female who answered identified herself as "Bree." Shyanguya asked "Bree" whether she was available and about the rates for the Tuesday special. "Bree" replied that the rate was "150." They agreed to meet.

_____

[3] The only differences were the title of the ad and the photograph of the backside of a female shown in the ad. Officer Katanya testified that she had received calls informing her that an ad she placed on craigslist had also been seen on Cityvibe.

3

Shyanguya met a women outside a hotel who identified herself as "Bree," and they went into a hotel room. The first thing "Bree" said upon entering the room was "do you have the money." Shyanguya said he did, and she told him to put the money on a table. Shyanguya asked "Bree" if she was a "cop," but she did not respond. Shyanguya saw condoms on the television armoire and said that he only had a hundred dollars. "Bree" began "badgering" Shyanguya, asking him, "[W]hat would you like to do." Shyanguya responded, "I don't wanna do anything. I just want everything you advertise for." Shyanguya testified that what "Bree" had advertised for was "her fantasy."

Shyanguya "wanted a fantasy" and expected to receive "[t]he fantasy that was advertised." Shyanuga denied that he ever used the term "full service" or made a request to engage in sexual activity during any of his conversations with "Bree." Shyanguya admitted that he had brought condoms and lubricant with him that night, which were in a plastic bag that was seized by the police.

III.

At the conclusion of trial, the District Court of the First Circuit (District Court) found Shyanguya guilty as charged of prostitution, for offering to engage in sexual conduct for a fee. The District Court sentenced Shyanguya to a $500 fine and $30 crime victim fee. The District Court filed its "Notice of Entry of Judgment and/or Order" (Judgment) on February 2, 2009, and this appeal followed.

DISCUSSION

I.

A.

Shyanguya was charged by written complaint, which stated:

> On or about the 16th day of September, 2008, in the City and County of Honolulu, State of Hawaii, FRANCIS M. SHYANGUYA, also known as Frncis M. Shyanguya did engage in, or agree or offer to engage in, sexual conduct with another person for a fee, thereby committing the offense of

4

> Prostitution, in violation of Section 712-1200(1) of the Hawaii Revised Statues.

(Emphasis in original.)

Shyanguya argues that the complaint was defective because it only charged him with agreeing or offering to engage in "sexual conduct," a term that is defined by statute, and failed to allege the specific type of conduct under the statutory definition that he offered or agreed to engage in. Citing Wheeler, 121 Hawai'i at 394, 219 P.3d at 1181, Shyanguya argues that because the statutory definition of the term "sexual conduct" does not "comport with its commonly understood definition[,]" the charge against him was insufficient for failure to allege an essential element of the offense and did not provide him with fair notice of the alleged offense.

Because Shyanguya challenges the sufficiency of his charge for the first time on appeal, the Motta/Wells liberal construction rule is applicable. Wheeler, 121 Hawai'i at 399, 219 P.3d at 1186. Under the liberal construction rule, we "will 'not reverse a conviction based on a defective indictment or complaint unless the defendant can show prejudice or that the indictment or complaint cannot within reason be construed to charge a crime.'" Id. at 400, 219 P.3d at 1187 (brackets and citation omitted). As explained below, we conclude that Shyanguya's challenge to the sufficiency of the charge is without merit.

B.

Shyanguya was charged with violating HRS § 712-1200(1), which provided that:

> (1)  A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee.

(Emphasis added.)  The term "sexual conduct" as used in HRS § 712-1200(1) is specifically defined to mean "'sexual penetration,' 'deviate sexual intercourse,' or 'sexual contact,' as those terms are defined in [HRS] section 707-700." HRS § 712-

5

1200(2) (1993). The terms "sexual penetration," "deviate sexual intercourse," and "sexual contact" are, in turn, defined in HRS § 707-700 (1993 & Supp. 2011) as follows:

"Sexual penetration" means:

(1)     Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. As used in this definition, "genital opening" includes the anterior surface of the vulva or labia majora; or

(2)     Cunnilingus or anilingus, whether or not actual penetration has occurred.

. . . .

"Deviate sexual intercourse" means any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the mouth, anus, or sex organs of the other.

. . . .

"Sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

(Sequence of defined terms altered.)

C.

At the outset, we note that the offense of prostitution set forth in HRS § 712-1200(1) does not specify a *mens rea*, and the charge against Shyanguya also did not allege a *mens rea*. In State v. Nesmith, Nos. SCWC-10-0000072, SCWC-30438, 2012 WL 1648974 (Hawai'i April 12, 2012), the Hawai'i Supreme Court held that the failure to allege a *mens rea* in charging the offense of operating a vehicle under the influence of an intoxicant (OVUII) in violation of HRS § 291E-61(a)(1) rendered the charge insufficient. Nesmith, 2012 WL 1648974, at *4. Like the HRS § 291E-61(a)(1) OVUII offense, the offense of prostitution in violation of HRS § 712-1200(1) does not specify a *mens rea* in the

statutory definition of the offense, but would appear to require proof of *mens rea* to establish the offense.  See HRS § 702-204 (1993).

The Hawai'i Supreme Court's decision in Nesmith raises, but does not clearly answer, the question of whether a deficiency in a charge for failing to allege the requisite *mens rea* is a jurisdictional defect.  In Nesmith, the concurring and dissenting opinion by Justice Acoba reads the majority opinion as concluding "that a state of mind is a 'fact' that must be included in an HRS § 291E-61(a)(1) charge for due process purposes only, but not an element of HRS § 291E-61(a)(1) that must be included in the charge for purposes of jurisdiction."  Nesmith, 2012 WL 1648974, at *19 (Acoba, J., concurring and dissenting) (brackets omitted).  Although the Nesmith majority opinion does not state this distinction between the sufficiency of a charge for due process purposes and for jurisdictional purposes in unmistakable terms, pending further clarification by the Hawai'i Supreme Court, we adopt Justice Acoba's reading of the majority's opinion.  Under this reading, the failure to allege a *mens rea* in the prostitution charge against Shyanguya would not constitute a jurisdictional defect in the charge.  We therefore conclude that Shyanguya waived any challenge to the sufficiency of the charge for failure to allege a *mens rea* by not objecting on this basis in the District Court and by not asserting this claim on appeal. See State v. Hoglund, 71 Haw. 147, 150-51, 785 P.2d 1311, 1313 (1990); State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argument at trial, and thus it is deemed to have been waived."); Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2008)("Points [of error] not presented in accordance with this section will be disregarded[.]"); HRAP Rule 28(b)(7) (2008) ("Points not argued may be deemed waived.").

D.

Returning to the deficiency in the charge asserted by Shyanguya, we conclude that the State's use of the term "sexual conduct" and its failure to allege specific conduct under the statutory definition of that term did not render the charge insufficient.

Wheeler is inapposite. Unlike in Wheeler, the statutory definition of "sexual conduct," in the context of a prostitution offense, is consistent with and does comport with its commonly understood meaning. The term "sexual" means "of, pertaining to, or for sex; sexual matters[.]" Dictionary.com., http://dictionary.reference.com/browse/sexual (defining "sexual") (last accessed June 20, 2012). The term "conduct" means "personal behavior; way of acting[.]" Dictionary.com., http://dictionary.reference.com/browse/conduct (defining "conduct") (last accessed June 20, 2012). Thus, the term "sexual conduct" encompasses personal behavior pertaining to or for sex or sexual matters.

Because the statutory definition of "sexual conduct," as that term is used in the HRS § 712-1200(1) prostitution offense, comports with its commonly understood meaning, we conclude that the charge against Shyanguya was sufficient, as it gave him fair notice of the offense with which he was charged. See State v. Mita, 124 Hawai'i 385, 391-92, 245 P.3d 458, 464-65 (2010) ("Wheeler does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP [(Hawai'i Rules of Penal Procedure)] Rule 7(d) that 'the charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged.'" (brackets omitted)). Under our analysis, the charge was sufficient even if Shyanguya had made a timely objection to the sufficiency of the charge based on

8

its use of the term "sexual conduct." It therefore follows that the charge passes muster under the Motta/Wells liberal construction rule.[4/]

II.

Shyanguya contends that his trial counsel provided ineffective assistance at trial as a result of counsel's alleged "damaging and inept cross-examination, inadequate and prejudicial direct examination, and superficial and inadequate closing arguments."

A defendant who raises a claim of ineffective assistance of counsel bears the burden of showing: (1) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence"; and (2) "that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980); State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). "General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry." Briones v. State, 74 Haw. 442, 462, 848 P.2d 966, 976 (1993). As a general rule, "matters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48 (1998) (internal quotation marks and citations omitted; emphasis in original). If counsel's allegedly erroneous actions or omissions have "an obvious

---

[4/] In addition to the written complaint, the State also orally charged Shyanguya prior to trial. The oral charge was essentially the same as the written complaint, except that the oral charge omitted the year of the alleged offense. We reject Shyanguya's contention that the omission of the offense year in the oral charge rendered the charge against him insufficient. Under Hawai'i Rules of Penal Procedure (HRPP) Rule 7(a) (2008), it is the written complaint that constitutes the charge in this case. At the time relevant to this case, HRPP Rule 7(a) stated that "[t]he charge against a defendant is an indictment, an information, or a complaint filed in court[.]" We conclude that because the written complaint included the year of the alleged offense, the omission of the year in the oral charge did not cause the charge against Shyanguya to become deficient.

tactical basis for *benefitting* the defendant's case[,]" they "will not be subject to further scrutiny." Briones, 74 Haw. at 462-63, 848 P.2d at 976 (emphasis in original). We conclude that Shyanguya has failed to meet his burden of showing that his trial counsel provided ineffective assistance.

A.

Shyanguya contends that trial counsel provided ineffective assistance because counsel should have cross-examined Officer Katanya more extensively on the subject of her knowledge of street vernacular, to obtain details such as how many customers in her undercover operations used the term "full service." Shyanguya suggests that such cross-examination could have served to cast doubt on Officer Katanya's testimony that "full service" means sexual intercourse and fellatio in street vernacular.

Officer Katanya testified on direct examination that she had posed as a prostitute in more than 200 undercover operations similar to Shyanguya's case and that her knowledge of street vernacular was based on this undercover experience, as well as other training. The cross-examination suggested by Shyanguya could have served to bolster Officer Katanya's credibility if, for example, it elicited testimony that based on Officer Katanya's extensive undercover experience, Shyanguya's actions and the use of the term "full service" were typical of customers seeking to engage in sexual conduct for a fee. We conclude that Shyanguya's speculation concerning whether more extensive cross-examination of Officer Katanya would have been beneficial does not support his claim of ineffective assistance of counsel. We decline to second-guess the strategic decisions made by Shyanguya's counsel in cross-examining Officer Katanya.

10

B.

On direct examination of Shyanguya, his trial counsel elicited testimony that Shyanguya had been advised that he may be better off pleading no contest than going to trial because a guilty verdict after trial may reduce Shyanguya's chances of becoming a United States citizen. Shyanguya testified that despite this advice and the increased risk resulting from contesting the case at trial, he decided to go to trial because he believed he was innocent.

Shyanguya argues that his trial counsel's "attempt to bolster Shyanguya's credibility by playing the 'citizenship card'" was highly improper, irrelevant, and prejudicial and constituted ineffective assistance. Assuming that defense counsel's eliciting this testimony was improper, it was prejudicial to the State and benefitted Shyanguya, because it bolstered Shyanguya's credibility by suggesting that he insisted on going to trial, despite the increased risk to his desired citizenship, because he believed he was innocent. Alleged improper actions by defense counsel that benefit the defendant and prejudice the State do not provide a basis for a claim of ineffective assistance of counsel.

C.

Finally, Shyanguya argues that his trial counsel was ineffective for failing to make a better closing argument. We are not persuaded. Shyanguya acknowledges that trial counsel attacked Officer Katanya's credibility in closing argument by pointing out errors in her police report and arguing that her recollection of Shyanguya's case was blurred because of the large number of undercover operations in which she had been involved. We conclude that Shyanguya's suggestion that trial counsel could have made a better argument on certain points did not demonstrate that counsel provided ineffective assistance.

CONCLUSION

For the foregoing reasons, we affirm the Judgment of the District Court.

DATED: Honolulu, Hawaiʻi, June 25, 2012.

On the briefs:

Mary Ann Barnard
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

12